UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KELLY MARTIN, ETC.                              CIVIL ACTION

VERSUS                                          NO. 06-1770

MICHAEL DAVIS, ET AL                            SECTION "C" (3)

ORDER AND REASONS

This matter comes before the Court on motions for summary judgment based on qualified immunity filed by Michael Davis ("Davis") and the City of Westwego. Having considered the record, the memoranda of counsel and the law, the Court has determined that summary judgment is appropriate for the following reasons.

The plaintiff, Kelly Martin ("Martin"), filed this matter in state court seeking damages on behalf of her children relative to the death of their father and her ex-husband, Christopher Archuleta ("Archuleta"). Archuleta was shot by Michael Davis ("Davis"), a police officer with the Westwego Police Department, and subsequently died. Suit was removed on the basis of the 28 U.S.C. § 1331, based on the plaintiff's allegations of deprivation of civil rights under the United States Constitution and 42 U.S.C. § 1983. The plaintiff claims violation of Section 1983 based on his Fourth Amendment right to be

1

free from unreasonable searches and seizures and invasion of privacy and his Fourteenth Amendment right to due process, along with state law claims for wrongful death, assault, battery and unconstitutional seizure. (Rec. Doc. 12).

The undisputed facts indicate that on the night of March 30, 2005, Archuleta went to the home of Martin armed with a shotgun.[1] He threatened his former wife and threatened suicide before Martin's roommate, Debbie Rodriguez ("Rodriguez"), called the police. Archuleta went outside and fired a shot. Accordingly to Rodriguez, the police responded shortly thereafter. The 911 dispatch from the Jefferson Parish Sheriff's Office to all units provided information including the address where Martin and Rodriguez lived and Archuleta had departed, a description of Archuleta and what he was wearing, the fact that a shot was fired and the color and make of Archuleta's vehicle. The tape of the dispatch indicates that at least two police units responded.

According to his statement, Davis was the first officer to locate a vehicle fitting the description. After the vehicle stopped, Davis exited with his gun drawn and repeatedly asked Archueta to slowly exit from his vehicle with his hands up. At first he had his hands up, but then put his hands behind his back. Davis stated that he repeatedly asked Archuleta to show his hands and get on the ground, that Archuleta put

---

[1] The only properly authenticated evidence provided is the affidavit of Davis, which would be sufficient to support summary judgment on the issue of qualified immunity.. No objection to the other evidence presented by the defendant has been made and, in fact, the plaintiff appears to rely upon it in her opposition.

2

his hands to the side and that Davis saw a bulge on Archuleta's side. Davis reported that Archuleta started walking toward Davis saying words to the effect that Davis was going to have to shoot him while continuing to move his hands to his side and back. Davis shot Archuleta when he was approximately five or six yards away. The material aspects of Davis's statement are corroborated by the statements of Corey Griffen ("Griffen") and Jennifer Chapman ("Chapman"), witnesses on the scene.

The plaintiff opposes the motion based on the facts that it is unclear who provided the dispatcher with the description of Archuleta's clothes, that there was no vehicle license plate number provided, that it is unclear if backup was requested by Davis, that no other witness mentioned a bulge on the Archuleta's side, and that no weapon was found by another officer upon arriving at the scene. The plaintiff also claims discrepancies between the statement of Davis and those of Griffen and Chapman relative to whether separate orders to get on the ground were made and the exact position of Archuleta's hands at all times prior to the shooting.

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the

district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid*, 784 F.2d at 578. The Court must find "[a] factual dispute ... [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party ... [and a] fact ... [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir.1989)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459 1462 (5th Cir.1995)(citing *Celotex*, 477 U.S. at 322-24 and Fed.R.Civ.P. 56(e)). The non-moving party may submit affidavits or other evidence to rebut with specific facts the movant's supported assertion of the absence of a genuine issue of material fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In order to create a jury question on an issue, "there must be a dispute in the substantial evidence, that is, evidence which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Chaney v. New Orleans Pub. Facility Management*, 179 F.3d 164, 167 (5th Cir.1999).

Section 1983 provides that every person, who, under color of law, subjects, or

causes to be subjected, any person within the jurisdiction of the United States "a deprivation of any rights, privileges, or immunities under the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983. Claims of excessive force in the context of arrests or investigatory stops should be analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Qualified immunity protects officers charged with discretionary duties from suit unless their conduct violates a clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The burden is on the plaintiff to overcome a defendant's defense of qualified immunity. *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied*, 460 U.S. 1012 (1983).

In *Katz v. Saucier*, 553 U.S. 194, 201 (2001), the Supreme Court refined its earlier *Harlow* ruling and set forth a two-pronged analysis to determine the propriety of qualified immunity in the context of allegations of excessive use of force.[2] An officer is barred from qualified immunity if: (1) there is a violation of a clearly established constitutional right, and (2) the reasonable officer would be aware that his conduct was unlawful in the situation he confronted. *See Katz*, 553 U.S. at 207-208. The effect of

---

[2] In order to establish a claim for excessive force, the plaintiff must show (1) a significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable. *Reese v. Anderson*, 926 F.2d 484, 500 (5th Cir. 1991).

qualified immunity is to grant officers immunity from reasonable mistakes as to the legality of their actions. *Id*. at 206. It should be further emphasized that qualified immunity obtains *in addition* to the deference owed the officer on the underlying constitutional claim, for instance in allowing wide latitude for officer safety or to guard against potential flight. *See id*. (emphasis added). The objective reasonableness standard as applicable here is "intended to provide government officials with ability reasonably [to] anticipate when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (internal citations omitted). The objective reasonableness standard "provides ample protection to all but the plainly incompetent and those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Supreme Court recognized in *Graham*, 490 U.S. 386, the constitutional right to be free of objectively excessive force during an investigatory stop or arrest. Under a standard of objective reasonableness, the Court will determine whether a reasonable police officer would have used a similar degree of force in light of the particular facts and circumstances the officer confronted at the time of the incident. *Id*. at 396. When gauging the reasonableness of an officer's actions, the Court should consider the following factors: 1 ) the severity of the crime at issue, 2) whether the suspect poses an immediate threat to the safety of the officers or others, 3) and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* "Deadly force is reasonable when an officer had

"probable cause to believe that the suspect pose[d] a threat of serious harm to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

As to the plaintiff's state law battery claim, a police officer is privileged to commit assault and battery provided that the force used is reasonable. *See* La.C.Cr.P. art. 220; *Kyle v. City of New Orleans*, 353 So.2d 969 (La. 1977). All of the plaintiff's state law claims are based on the underlying reasonableness of the force used. *Mathieu v. Imperial Toy Corp.*, 646 So..2d 318 (La. 1994). For the present purpose, the overarching reasonableness guides the Court's analysis with respect to both the federal and state claims.

The plaintiff argues that Davis created the danger he faced by not seeking backup[3] and by exiting his vehicle assuming that Archuleta was armed, making the use of any force unreasonable. (Rec. Doc. 50, pp. 8-9). She also argues that "The documents presented manifest the inconsistency of Officer Davis' actions and statements; therefore, one can conclude that any unjustifiable basis asserted by Officer Davis for the killing of Mr. Archuletta (sic) is impeachable." (Rec. Doc. 50,p. 10). The Court disagrees with the plaintiff's assessment and import of the contents of Davis's affidavit and the other documentation. The undisputed facts establish that Davis was facing an fleeing irrational man who had just fired a gun, who would not comply with simple commands and who was aggressively approaching Davis and his gun while asking to be shot.

---

[3] The 911 dispatch transcript indicates that at least one other unit was en route.

The plaintiff also argues that the officer created the danger by his own unreasonable conduct and can not escape liability for shooting Archuleta in an effort to protect himself, relying on *Starks v. Enyart*, 5 F.3d 230 (7th Cir. 1993). In *Starks*, the officer fatally shot a fleeing suspect in a car who failed to brake when the officer stepped in front of the car and the court denied summary judgment on the issue of qualified immunity. That court distinguished between violent and non-violent fleeing felons:

> We permit deadly force to be used against violent fleeing felons in part because they have forfeited the right to a less intrusive seizure by their actions. Fleeing felons who have not resorted to violence are accorded less intrusive seizures. If a fleeing felon is converted to a "threatening" fleeing felon solely based on the actions of a police officer, the police should not increase the degree of intrusiveness. In other words, we have no countervailing governmental interest in unreasonable police conduct that would justify a greater intrusion on the individual's rights.

*Id.*, 5 F.3d at 234. The Court finds that the fact that Archuleta had threatened Martin and discharged a gun immediately before the incident distinguishes this matter from *Starks*. Given the mental disturbance displayed by Archuleta in confronting Davis, the plaintiff's claims do not survive the scrutiny of an inquiry into whether, at the time of the shooting, it was clearly established in a more "particularized" sense that Davis was violating Archuleta's Fourth Amendment rights. *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004).

Without detracting from the enormity of the resulting tragedy, the Court can not

8

find that there was a violation of a clearly established constitutional right or that the reasonable officer would be aware that his conduct was unlawful in the situation Davis confronted. Archuleta had discharged a firearm immediately prior to the encounter. Davis had an extremely brief period of time to react to the threat posed by Archuleta. *Hathaway v. Bazany*, 507 F.3d 312, 322 (5th Cir. 2007). The Court finds that Davis's use of deadly force as not objectively unreasonable for purposes of qualified immunity, and that Davis was reasonable in his belief that Archuleta posed a threat of serious physical harm to him and to others. "Police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Because the Court finds that Davis acted reasonably under the circumstances, the state law claims are also subject to dismissal.

Finally, Westwego seeks summary judgment of any claim under Section 1983 under *Monell v. New York City Dept. Of Social Services*, 436 U.S. 658 (1978) and *Yates v. Unidenified Parties*, 2003 WL 21744384 (5th Cir.). It also seeks dismissal of the plaintiff's state law claims due to the dismissal of the underlying state law claims against Davis because of self-defense or application of La. Rev. Stat. 9:2798.1. The plaintiff has filed a response to the motion, but presents no argument that identifies the existence of a policy

9

or custom for purposes of *Monell* or that even pertains to the liability of Westwego for state law claims based on the actions of Davis. Those claims are, therefore, subject to dismissal.[4]

Accordingly,

IT IS ORDERED that the motion for summary judgment based on qualified immunity filed by Michael Davis is GRANTED. (Rec. Doc. 45).

IT IS FURTHER ORDERED that the motion for summary judgment filed by the City of Westwego is GRANTED. (Rec. Doc. 46).

New Orleans, Louisiana, this 22nd day of January, 2009.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[4] The Court's dismissal of the state law claims against Davis was based on the underlying reasonableness of Davis's conduct, not on self-defense or Section 9:2798.1. The Court does not pass on any issue thereby raised by the inclusion of either defense in this motion.